IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Christopher R. Price (Y41001), | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 19-cv-04277 ) ) Judge John F. Kness |
| Officer Kramer, *et al.*, | ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

In this *pro se* civil rights lawsuit pursuant to 42 U.S.C. § 1983, Plaintiff Christopher R. Price, a state prisoner, alleges correctional staff failed to protect him from an attack by his cell mate and used excessive force against him while detained at Cook County Jail. Before the Court is Defendants' motion for summary judgment, to which Price has responded. For the reasons stated below, Defendants' motion is granted.

**I.    LEGAL STANDARD**

Under Rule 56(a) of the Federal Rules of Civil Procedure, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material facts exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). A fact

is material if it might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 508 (7th Cir. 1992).

The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carrol v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door Cty Sch. Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). "Thus, summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992) (cleaned up) (quoting *Celotex*, 477 U.S. at 322 (1986)); *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019). When deciding a motion for summary judgment, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). LR 56.1(a). Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported by

citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). The party opposing summary judgment may also submit "a statement of additional material facts that complies with LR 56.1(d)." LR 56.1(b)(3). Material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party. *Smith*, 321 F.3d at 683. A plaintiff's *pro se* status does not excuse him from complying with Local Rule 56.1. *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

## II. BACKGROUND

Defendants filed a Rule 56.1 statement of material facts with their motion for summary judgment. (Dkt. 61.) Consistent with the local rules, Defendants also provided Price with a Local Rule 56.2 Notice, which explains what Local Rule 56.1 requires of a litigant opposing summary judgment. (Dkt. 57.)

In response, Price submitted a response to Defendants' statement of material facts (Dkt. 80), a memorandum of law in opposition to the motion for summary judgment (Dkt. 81), and a "declaration" (Dkt. 83). Price supports his disagreement with some of Defendants' statements of material facts with supporting exhibits, but not all. The Court considers Price's responses that are

properly disputed with supporting exhibits. Any additional facts included in Price's response that are not properly supported are not considered. Price's declaration sets forth his version of the facts underlying the events of April 24, 2019.

With the above discussion in mind, the facts below are taken from the Defendants' Local Rule 56.1 statements of material facts, Price's responses to those facts, Price's declaration, and Defendants' objections set forth in their reply brief. The Court accepts as true any undisputed statements of fact from the parties' statements. Where the parties' statements are properly supported by the cited materials and are not otherwise disputed by the evidence raised by the opposing party, the Court considers those statements as undisputed. *See* LR 56.1(e)(3). The Court has carefully examined each response submitted by the parties for relevancy, evidentiary support, and admissibility in construing the facts of this case and gives deference to Price's version of the facts where they are properly presented and supported by admissible evidence. The Court will not consider purely legal arguments, responses lacking evidentiary support, or responses that are inconsistent with deposition testimony.

Price entered Cook County Jail (CCJ) on January 11, 2019. (Dkt. 61, ¶ 1.) Defendants Correctional Officer Kramer and Correctional Officer Filipiak were employed by the Sheriff of Cook County at the Cook County Jail. (*Id.*, at ¶¶ 2-3.) Upon entering CCJ, Price was referred to and granted protective custody status. (*Id.*, at ¶ 4.) On March 8, 2019, Price's protective custody status was revoked due to him being found guilty of disrespecting staff and disobeying or resisting verbal orders following an unrelated incident in February 2019. (*Id.*, at ¶¶ 5-7.)

On April 24, 2019, Price was housed in the Rehabilitation Unit (RU), tier 1H, cell 1259. (*Id.*, at ¶ 17.) Price's cell mate for the preceding six to seven days was Nathanial Brown. (*Id.*, ¶¶ 18-19.) The parties dispute the events of the morning of April 24, 2019. Defendants contend that

4

they did not work at CCJ until 10:00 a.m., as they worked the 10:00 a.m. to 10:00 p.m. shift. (*Id.*, ¶¶ 21-22.) Price asserts that Officer Filipiak was present in the morning between 7:00 a.m. and 8:00 a.m., and that Price told Officer Filipiak that he was in danger of being assaulted. (Dkt. 83, ¶¶ 7-10.) Price also testified in his deposition that Defendants were present in the early morning. (Dkt. 61-31, pgs. 10-11.)

Price was let into the dayroom between 7:00 a.m. and 8:00 a.m. (Dkt. 61, ¶ 40.) At 7:45 a.m., Price submitted a grievance and informed Correctional Officer Herrera and another unknown correctional officer that he was being assaulted by his cell mate. (*Id.*, ¶ 41.) At approximately 10:45 a.m., Price was placed back in his cell and he was again assaulted by his cell mate. (Dkt. 83, ¶ 11.) Price screamed for help, but, according to Price, Defendants just laughed and made jokes. (*Id.*, ¶ 12.)

At approximately 5:40 p.m., Price was transferred from cell 1259 to cell 1068 on the lower level of Tier 1H. (Dkt. 61, ¶ 45.) Price's cellmate in cell 1068 was Kavon Reed. (*Id.*, ¶ 46.) Approximately 15 to 25 minutes later, Reed told Price not to unpack because he did not like gay people. (*Id.*, ¶ 48.) Shortly thereafter, Price told an unknown officer that Reed did not want Price in his cell. (*Id.*, ¶ 49.) And a few minutes later, Reed and Price had an altercation in the cell. (*Id.*, ¶ 50.)

At approximately 6:13 p.m., Defendants were assisting with handing out food trays. (*Id.*, ¶ 51.) When Price's cell door was opened to give him a food tray, Price attempted to push out of his cell. (*Id.*, ¶¶ 52-53.) The parties dispute the next set of events, with Defendants arguing that, in an attempt to prevent Price's escape and to address his refusal to comply with demands that he get on the ground, Defendants were required to use physical force and mace to subdue Price. Price counters that he was not defiant, and that Defendants used excessive force in subduing him. Once

5

subdued, Price was taken for decontamination and medical treatment. (*Id.*, ¶ 71.)

While in the dayroom the morning of April 24, 2019, Price completed and submitted a grievance. (*Id.*, ¶ 41.) The grievance was given control number 2019 x 04184 (Grievance 1). (*Id.*) The grievance identifies the "DATE OF INCIDENT" as April 23, 2019 at 9:00 p.m. (Dkt. 61-2, pg. 5.) Price did not identify the "NAME and/or IDENTIFIER(S) OF ACCUSED" as required on the grievance form. (*Id.*) Price stated that on April 23, 2019, at "around 9:00 p.m.," in cell 1259, he informed Deputy Herrera and another officer that he was being assaulted by his cell mate and that he needed to be moved. (*Id.*) Price stated that the staff laughed and made crude comments and forced him to stay in his cell where he was not safe. (*Id.*)

The next day, Grievance 1 was forwarded to the Office of Professional Review (OPR) for review and investigation. (Dkt. 61, ¶ 42.) Grievance 1 was returned to Price on April 26, 2019, with the notification that the grievance was sent to OPR. (Dkt. 61-2, pg. 9.) That same day, Price completed the appeal of the grievance in which he stated that "[O]fficer Kramer and the rest of the officers contacted laughed and made jokes about the [w]hole thing knowing I could have been killed or hurt badly." (*Id.*) The appeal was denied on May 6, 2019, with the notation that Price should contact OPR directly. (*Id.*)

On May 10, 2019, Price submitted a second grievance, control number N/C-19-01646 (Grievance 2). (Dkt. 61-2, pg. 32.) Grievance 2 stated that, on April 24, 2019, Officer Kramer and a sergeant placed Price in cell 1069 and ignored his pleas not to be placed in the cell because of fear his cell mate would also assault him. (*Id.*) Officer Kramer and Officer Filipiak ignored Price's pleas, and Price was assaulted by his cell mate. (*Id.*) That same day, Price's grievance was found to be noncompliant, with the notation that the grieved issue did not occur with the last 15 days.

6

(*Id*., pg. 33.)[1] Price's noncompliant grievance was returned to him on May 13, 2019. (*Id*.)

The grievance procedure in effect in April 2019 required detainees to complete and submit an Inmate Grievance Form within fifteen days of alleged grievable offense, and to appeal the grievance response within fourteen days from the receipt of the grievance response to exhaust the available administrative remedies. (Dkt. 61, ¶ 93.) Filing an appeal of a grievance response is required in order to exhaust a detainee's administrative remedies. (*Id*.) The grievance form requires a detainee provide the specific date, location, and time of the incident being grieved. (*Id*., ¶ 96.) The detainee must also provide the name and/or identifier of the accused. (*Id*.) Detainees may request a grievance form from a Correctional Rehabilitation Workers (CRW) or Inmate Services staff member. (*Id*., ¶ 97.) If a grievance form is not available, a detainee may use a blank piece of paper or any other type of paper to file a grievance. (*Id*.) Price was aware of and had used the grievance procedure at CCJ. (*Id*., ¶ 94.)

## III. DISCUSSION

Defendants move for summary judgment on several grounds. Defendants argue that Price failed to exhaust administrative remedies as to all claims; that his claims fail on the merits; and that Defendants are entitled to qualified immunity.

No action "shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To properly exhaust his administrative remedies, an inmate must complete each of the steps prescribed by prison's rules governing prison grievances. *See Chambers v. Sood*, 956 F.3d 979,

---

[1] Price disputes the reason for Grievance 2 being found noncompliant. But the grievance response Price relies on to dispute the reason for Grievance 2 being found to be noncompliant is actually for a different grievance for a different, non-related issue: control number NC-19-01205. (Dkt. 80, pg. 60.)

983 (7th Cir. 2020) (*citing Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019)); *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("Unless a prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred."). The primary justification for requiring prisoners to exhaust administrative remedies "is to give the prison an opportunity to address the problem before burdensome litigation is filed." *Chambers*, 956 F.3d at 983 (*citing Woodford v. Ngo*, 548 U.S. 81, 93–95(2006), and *Schillinger v. Kiley*, 954 F.3d 990, 995–96 (7th Cir. 2020)). Grievances are not, however, intended primarily to put an individual defendant on notice of a claim against him. *Jones v. Bock*, 549 U.S. 199, 219 (2007) ("We have identified the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit. . . . [E]arly notice to those who might later be sued . . . has not been through to be one of the leading purposes of the exhaustion requirement.").

Price submitted Grievance 1 the morning of April 24, 2019. Price identified the date and time of the incident as 9:00 p.m. on April 23, 2019. Price named Deputy Herrrera and an unknown officer in the text of the grievance but failed to indicate the name or identifier of the accused as required by the grievance form. The grievance also states that the issue arose while Price was housed in cell 1259.

The submitted grievance did not include any issues or conduct by Defendants and only reflected that the date of incident was April 23, 2019. The claims in this case are based on Defendants' conduct on April 24, 2019. As a result, the grievance did not identify the present Defendants or incidents in this matter.

Price argues that he did not have any more grievances or paper, so he was unable to include more information or name the Defendants. That argument is belied, however, by the fact that the

8

required identification of the accused is completely blank—allowing sufficient space to name the Defendants. Price had previously submitted other grievances not related to this lawsuit in which he readily identified three individuals in the box for naming/identifying the accused. (Dkt. 61-2, pgs. 15, 25.) In addition, Price wrote multipage grievances about other issues within the 15-day required time period including a three-page grievance (control number 2019 x 3209) (Dkt. 61-2, pgs. 14-16) and a two-page grievance (control number 2019 x 3207) (*id.*, pgs. 19-20), both on April 27, 2019.

      Price also argues that he named Officer Kramer in his appeal of the grievance. But that was two days after the incident at issue and only after the grievance had already been forwarded to OPR for investigation. Including Officer Kramer in the appeal did not remedy the initial grievance that provided no information about Officer Kramer and only identified the incident of April 23, 2019, as being at issue. Accordingly, Grievance 1 did not exhaust the administrative remedies as to the present claims.[2] *See Bowers v. Dart*, 1 F.4th 513, 517-18 (7th Cir. 2021) (grievance complaining that guards did not respond to pleas for help before assault by another inmate did not exhaust claim that guards ignored him during the attack); *Jones v. Taylor*, 834 F. App'x 283, 285 (7th Cir, Jan. 28, 2021) (nonprecedential disposition) (although district court improperly held plaintiff did not exhaust grievance based on a then-non-existing IDOC requirement, the grievance "does not help" plaintiff because the grievance does not mention the warden); *Sylvester v. Chandler*, No. 07 C 50050, 2010 WL 3420385, at *5 (N.D. Ill. Aug. 27, 2010) (finding that even if portions of grievance were timely, plaintiff failed to exhaust his administrative remedies because that substance of the grievance was not sufficient to alert defendants to any of the misconduct); *see also, Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) (grievance that did not name defendant

---

[2] Grievance 1 could not have addressed the alleged excessive force as the alleged excessive force took place after the grievance had been submitted.

9

or provide information that "should have identified him to the grievance officer" was fatally defective).

Grievance 2 does identify Defendants in both the required section naming the accused and in the text of the grievance. Grievance 2 alleges that Defendants ignored his pleas that he would be assaulted by his new cell mate when they placed in him cell 1069. Grievance 2 does not include any allegations that Price was the victim of excessive force during the extraction of cell 1069. Importantly, Grievance 2 was found to be noncompliant because it was submitted more than fifteen days after the April 24, 2019 incident. Because the grievance was noncompliant, it does meet the requirement that Price exhaust his administrative remedies. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) (to exhaust administrative remedies a prisoner must file complaints and appeals "in the place, and at the time, the prison's administrative rules require").

Price argues that the grievance was found to be noncompliant because it was a repeat submission of a grievance filed within the last 15 days (presumably the April 24, 2019 grievance). But Price relies on the response to a different grievance that was found to be noncompliant for that reason. Price is mistaken, and the grievance Price relies upon does not remedy the pertinent noncompliant grievance.

Price has, therefore, failed to exhaust his administrative remedies for his failure-to-protect claim against both Defendants: Grievance 1 did not contest Defendants' alleged failure to protect him in cell 1069 on April 24, 2019, and Grievance 2 was not submitted in compliance with CCJ procedures. In addition, because neither grievance alleged that Price was the victim of excessive force, Price has failed to exhaust his excessive force claim against Defendants.

By operation of 42 U.S.C. § 1997e(a), Price has no further recourse in federal court at this time, and dismissal without prejudice is warranted. In the light of Price's claims being dismissed

10

for failure to exhaust the administrative remedies available to him, the Court need not address the remaining arguments on summary judgment. This dismissal, therefore, constitutes a final appealable order. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (order dismissing § 1983 claim for failure to exhaust administrative remedies is appealable where there are no further remedies that plaintiff can pursue); *Barnes v. Briley*, 420 F.3d 673, 676-77 (7th Cir. 2005) (same).

If Price wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Price appeals, he will be liable for the $505 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be nonmeritorious, Price could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If Price seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court stating the issues he intends to present on appeal. *See* Fed. R. App. P. 24(a)(1).

**IV.  CONCLUSION**

For the reasons stated above, the Court grants Defendants' motion for summary judgment [60] and dismisses this case without prejudice. A final judgment order will be entered separately.

SO ORDERED in No. 19-cv-04277.

Date: November 8, 2021

_____
JOHN F. KNESS
United States District Judge

11